**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| KURT A. MUZQUIZ, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | No. 1:09-cv-351-WTL-TAB |
| ) | |
| BRADLEY BEATON, et al., ) | |
| ) | |
| Defendants. ) | |

**Entry Granting Defendants' Motion for Summary Judgment**

The plaintiff in this civil rights action is Kurt A. Muzquiz, who is confined at an Indiana prison. The defendants are Bradley Beaton, Anthony McGavock, and Randall Staab. Muzquiz's complaint alleges that the defendants used excessive force during his arrest and/or failed to intervene in the use of such force by others and denied him medical treatment for the injuries he incurred during the course of his arrest.

The defendants seek resolution of this action through summary judgment (dkt 53). First, the defendants argue that Muzquiz's claims of excessive force and failure to intervene are barred by *Heck v. Humphrey,* 512 U.S. 477, 114 S. Ct. 2364 (1994), because his allegations and sworn statements necessarily imply the invalidity of his criminal convictions for resisting law enforcement by fleeing in a vehicle and criminal recklessness – convictions which have not been invalidated. Next, the defendants assert that there is no evidence that they were deliberately indifferent to Muzquiz's medical condition. Finally, the defendants claim they are entitled to qualified immunity.

For the reasons explained in this Entry, the defendants' motion for summary judgment is **granted.**

**I. Summary Judgment Standard**

The motion for summary judgment in this civil rights action, as with any such motion, must be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. Rule 56(c). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.* If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 127 S.Ct. 1769, 1776 (2007).

"When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must — by affidavits or as otherwise provided in this rule — set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." FED. R. CIV. P. 56(e)(2). In this case, the defendant has met that burden through his unopposed motion for summary judgment. *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission."). By not responding to the motion for summary judgment, the plaintiff has conceded to the defendants' version of the facts. *Brasic v. Heinemann's Inc.,* 121 F.3d 281, 286 (7th Cir. 1997). This is the result of Local Rule 56.1(h), of which the plaintiff was notified. This does not alter the standard for assessing a Rule 56(c) motion, but does "reduc[e] the pool" from which the facts and inferences relative to such a motion may be drawn. *Smith v. Severn,* 129 F.3d 419, 426 (7th Cir. 1997).

## II. Material Facts

On April 23, 2008, Beaton, an officer with the Indianapolis Metropolitan Police Department, was working off-duty, part-time employment controlling the traffic signal at Madison Avenue and Banta Road, in Marion County, Indiana, for morning school traffic. At approximately 7:13 a.m., Beaton observed a vehicle run the red light at the intersection he was controlling. Beaton observed that same vehicle nearly strike school buses and other vehicles with the right of way, as well as two (2) students walking across the intersection. Beaton immediately activated the emergency lights and sirens on his fully-marked police vehicle and attempted to pull over the vehicle he saw run the red light.

Beaton attempted to catch the vehicle, which he identified as a gray Buick Roadmaster, but the gray vehicle did not pull over. Beaton chased the grey vehicle down various streets, through parking lots and intersections. The grey vehicle continued to disregard traffic signals and nearly hit other vehicles. Beaton advised the dispatcher of his location and that he was in a vehicle pursuit. Eventually, the grey vehicle came to rest at a dead end, just short of a chain link fence, and Beaton observed a white male, later identified as Muzquiz, exit the driver's seat. Beaton exited his fully-marked vehicle, with lights and sirens still activated, verbally identified himself as a police officer, and ordered Muzquiz to stop. Because Beaton was not on-duty at the time of this incident, he was not in uniform, but he was wearing a hanging badge around his neck, was armed with his issued handgun and department radio, and was operating a fully-marked police vehicle.

Beaton gave verbal commands, in a loud voice, repeating "Police Officer! Get on the ground!" Muzquiz did not remain at his vehicle, instead running from the area on foot, heading northbound behind the apartment building. Beaton followed Muzquiz on foot, continuing to give verbal commands.

Beaton did not know whether Muzquiz was armed. During the foot pursuit in the apartment complex, Muzquiz stopped running three times, turned around and initiated a fight with Beaton, who each time struggled with Muzquiz, who refused to allow Beaton to handcuff him. The third time Muzquiz stopped running was back on Barbados Drive, where

McGavock arrived on the scene and saw Beaton struggling with Muzquiz. McGavock was in a fully-marked police car, and he was wearing his Perry Township School Police uniform.

McGavock assisted Beaton in getting Muzquiz handcuffed and brought under control. After positively identifying Muzquiz from his Indiana probation card and a records check, Beaton advised Muzquiz that he was being placed under arrest for resisting law enforcement by fleeing, in automobile and on foot, resisting law enforcement by force, criminal recklessness, battery on an officer, and driving while suspended with a prior.

Staab also arrived on the scene and interviewed Muzquiz. Staab filled out a Supervisory Special Report to document the morning's events. Staab noted in his report that Beaton "suffered pain to chest and both shoulders, scrapes to both knees and elbows" and that Muzquiz "suffered scrapes to the right side of his forehead." Staab noted that the scrape mark to Muzquiz's right forehead "appeared to be caused by the pavement." Muzquiz did not request medical attention. Muzquiz was transported to the APC (Arrestee Processing Center) by a Marion County Sheriff's Department Wagon.

That same day, April 23, 2008, Muzquiz was booked into the Marion County Jail. He had his booking photo taken and went through a Medical History Screening intake. During the intake process, Muzquiz responded "no" to the question, "Do you have a medical problem such as bleeding or injuries that require immediate medical attention?" Muzquiz's medical intake records show that he was not in any obvious pain. The records also note that Muzquiz was given a referral to sick call. On April 25, 2008, Muzquiz executed a document refusing medical treatment for the injuries of which he complained. On May 2, 2008, Muzquiz had a second booking photo taken based on the outstanding warrant for Fraud, Cause Number 49F18-0703-FD-052066.

On January 9, 2009, Muzquiz executed a written plea agreement in which he pled guilty to: Counts II (Resisting Law Enforcement by Fleeing in a Vehicle/D Felony); VI (Criminal Recklessness/A Misdemeanor); VII (Driving While License Suspended with a Prior Conviction); and VIII (Habitual Offender/SE). As a result of the convictions based on Muzquiz's guilty plea, Muzquiz received a sentence of two years for Count II (Resisting), one year for Count VI (Criminal Recklessness), and one year for Count VII (Driving While Suspended). The sentences for these three counts were ordered to run concurrently. Pursuant to the guilty plea, the court enhanced Muzquiz's conviction on Count II by two years due to Muzquiz being a Habitual Offender. According to the plea agreement, two years was suspended to probation. The remaining charges were dismissed in exchange for Muzquiz's guilty plea as noted above. To date, Muzquiz's convictions have not been reversed, overturned, or invalidated in any way.

### III.  Applicable Law

Muzquiz's claims are asserted pursuant to 42 U.S.C. § 1983. "Section 1983 is not itself a source of substantive rights; instead it is a means for vindicating federal rights elsewhere conferred." *Ledford v. Sullivan,* 105 F.3d 354, 356 (7th Cir. 1997) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). "[T]he first step in any [§ 1983] claim is to identify the specific constitutional right infringed." *Albright v. Oliver,* 510 U.S. 266, 271

(1994); *see Conyers v. Abitz,* 416 F.3d 580, 586 (7th Cir. 2005)("[C]onstitutional claims must be addressed under the most applicable provision."). As explained below, the excessive force and failure to intervene claims invoke the protections of the Fourth Amendment, while his denial of medical care claim invokes both the Eighth and Fourteenth Amendments.

### A. Excessive Force and Failure to Intervene

The excessive force and failure to intervene claims asserted by Muzquiz invoke the following constitutional provisions:

"[A]ll claims that law enforcement officers have used excessive force--deadly or not--in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor,* 490 U.S. 386, 396 (1989). The Fourth Amendment prohibits the use of excessive force during the execution of a seizure. *Estate of Phillips v. City of Milwaukee,* 123 F.3d 586, 592-93 (7th Cir. 1997) (where an offender is resisting arrest, an officer can use that amount of force necessary to overcome the offender's resistance), *cert. denied,* 522 U.S. 1116 (1998).

A state actor may be liable under a theory of failing to intervene to prevent unconstitutional harm under a due process theory when (a) that individual was present and had reason to know that a constitutional violation was being committed by a law enforcement officer, and (b) he had a realistic opportunity to prevent the harm from occurring. *Lewis v. Richards,* 107 F.3d 549, 553 (7th Cir. 1997); *Yang v. Harden,* 37 F.3d 282, 285 (7th Cir. 1994).

The rule of *Heck v. Humphrey*, 512 U.S. 477 (1994), on which the defendants rely in seeking summary judgment, is this: The plaintiff cannot proceed where "success in a . . . [42 U.S.C. §] 1983 damages action would implicitly question the validity of conviction or duration of sentence, the litigant must first achieve favorable termination of his available state, or federal habeas, opportunities to challenge the underlying conviction or sentence." *Muhammad v. Close*, 540 U.S. 749, 751 (2004) (citing to *Heck*); *see also Apampa v. Layng*, 157 F.3d 1103, 1105 (7th Cir. 1999). "[U]nder *Heck*, a § 1983 claim for damages is not cognizable (i.e. does not accrue) if a judgment in favor of the plaintiff on that claim 'would necessarily imply the invalidity of [the plaintiff's] conviction or sentence.'" *Snodderly v. R.U.F.F. Drug Enforcement Task Force*, 239 F.3d 892, 896-97 (7th Cir. 2001)(citing *Heck*, 512 U.S. at 487).

The defendants argue that the facts on which Muzquiz relies in his complaint and the events on which Muzquiz's criminal conviction for resisting law enforcement and criminal recklessness are intertwined and that, therefore, Muzquiz's claims are barred. The defendants' argument requires that the court determine whether, if Muzquiz's Fourth Amendment claims were successful here, that outcome would necessarily imply the invalidity of any of his criminal convictions.

The parties' versions of what occurred on April 23, 2008, are different in material respects. Both the complaint and Muzquiz's deposition testimony are filled with statements that call into question the validity of Muzquiz's January 9, 2009, criminal convictions for resisting law enforcement and criminal recklessness. For example:

1. Muzquiz has both pled and provided sworn testimony that he did not flee from Beaton in a vehicle. Muzquiz alleges that he was innocently standing in the Martinique Apartment Complex on the morning of April 23, 2008, minding his own business, right up until the time he claims to have "stopped" for McGavock.[1] This allegation, and Muzquiz's continued insistence on its truth, directly conflicts with the facts underlying his guilty plea. Muzquiz admitted in his guilty plea that on April 23, 2008, that he resisted Beaton by fleeing from him in a vehicle, and that the pursuit ended at the Martinique Apartment Complex. The audio recording made at the time of the event provides further evidence that the vehicle pursuit occurred, that Beaton was using his police siren, and that Muzquiz immediately fled on foot at the end of the vehicle pursuit. In addition, Muzquiz admits to running away from Beaton on foot.

2. In addition, Muzquiz's complaint and deposition testimony indicate that (1) he did not resist Beaton, (2) he never ran a red light, (3) he never saw Beaton in a fully-marked car, (4) he never saw Beaton's emergency lights or heard Beaton's siren, and (5) he did not know Beaton was a police officer. However, Muzquiz's convictions rest entirely upon the facts described by Beaton and specifically outlined at Muzquiz's guilty plea hearing: that Muzquiz (1) ran at least one red traffic light, (2) resisted Beaton, and (3) endangered others with his driving behavior.

The defendants take the position, as is supported by Muzquiz's convictions for resisting law enforcement and criminal recklessness, that Muzquiz is responsible for creating and continuing the confrontation with the officers and for escalating the force which was necessary to gain control over him and place him under arrest. Muzquiz's version of events, in his complaint as outlined above, is directly contrary to the factual record supporting his convictions. Muzquiz's version of events necessarily implies that his convictions for resisting law enforcement and criminal recklessness are invalid. This position compels the conclusion that his claims here are barred by *Heck*. See *Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003) (as "master of his ground," if a plaintiff makes allegations that are inconsistent with his valid convictions, "*Heck* kicks in and bars his civil suit"). Accordingly, his claims of excessive force and failure to intervene are barred by *Heck* unless and until his convictions are set aside.

Summary judgment on Muzquiz's Fourth Amendment claims in favor of defendant Staab is also appropriate on an alternative ground: Staab had no personal involvement in the vehicle pursuit, foot pursuit, or arrest of Muzquiz. Liability under section 1983 must be premised on a finding that the defendant caused the deprivation at issue. *Burks v. Raemisch,* 555 F.3d 592, 593-94 (7th Cir. 2009) ("Section 1983 does not establish a system

---

[1] Compl., Dkt. 1; Muzquiz Depo., p. 26, l. 6 – p. 27, l. 2; p. 86, l. 19 – p. 87, l. 12, Ex. A.

of vicarious responsibility. Liability depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise. . . . )(citing *Monell v. New York City Dep't of Social Services,* 436 U.S. 658 (1978)). Without a showing of direct responsibility for the improper action, a plaintiff cannot establish liability. *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983).

### B.  Deliberate Indifference to Medical Claim

Muzquiz's claim that the defendants failed to provide him with medical attention will be analyzed under the standards of the Eighth Amendment.[2] The Eighth Amendment imposes a duty on prison officials to provide medical care to inmates. *Vance v. Peters,* 97 F.3d 987, 991 (7th Cir. 1996), *cert. denied,* 520 U.S. 1230 (1997). In order for an inmate to state a claim under § 1983 for medical mistreatment or denial of medical care, the prisoner must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  *Estelle v. Gamble,* 429 U.S. 97, 106 (1976). Deliberate indifference exists only when an official "knows of and disregards an excessive risk to an inmate's health; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. 825, 837 (1994) (construing *Estelle*).

The unopposed record reflects that Muzquiz did not suffer any injury requiring medical attention. Muzquiz's medical records from the Marion County Jail and the Department of Corrections do not support Muzquiz's testimony or allegations in this suit; rather, those records establish that Muzquiz did not require immediate medical attention, that he was not in any obvious pain, and that he was not bleeding. Those records also show Muzquiz was given the opportunity to go to sick call, but Muzquiz refused medical treatment. Lastly, those records show that Muzquiz does not suffer from the injuries he alleges in this case. Based on these undisputed facts, the defendants are entitled to judgment as a matter of law with respect to the failure to provide medical attention claim.

### IV.  Conclusion

The defendants' motion for summary judgment (dkt 53) is **granted.** Judgment consistent with this Entry shall now issue. The dismissal of the Fourth Amendment excessive force and failure to protect claims shall be without prejudice, while the dismissal of the Eighth and Fourteenth Amendment deliberate indifference to a serious medical need claim shall be with prejudice. The court need not address the other grounds on which the defendants seek summary judgment.

**IT IS SO ORDERED.**

_William T. Lawrence_
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Date: 03/05/2010

---

[2]This is because the due process rights of a pre-trial detainee guaranteed by the Fourteenth Amendment are at least as great as the Eighth Amendment protections available to a convicted prisoner, *Revere v. Massachusetts General Hosp.,* 463 U.S. 239 (1983); *Hall v. Ryan,* 957 F.2d 402, 404 (7th Cir. 1992), and an act or practice that violates the Eighth Amendment also violates the Fourteenth Amendment rights of a pre-trial detainee. *Bell v. Wolfish,* 441 U.S. 520, 536 n.16;  (1979); *Martin v. Tyson,* 845 F.2d 1451, 1456 (7th Cir. 1988).